IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

LORENZO DAVIS, JR.,

    Plaintiff,

v.                                                                         Case No. 2:22-cv-02217-MSN-atc
                                                                         JURY DEMANDED

STAPLES CONTRACT and
COMMERCIAL INC., *et al.*,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Before the Court is Defendant Staples Contract and Commercial LLC's ("Staples") Motion for Summary Judgment (ECF No. 48, "Motion"), filed January 3, 2025. Plaintiff Lorenzo Davis, Jr. responded in opposition (ECF No. 52) on January 31, 2025, and Defendant filed a reply (ECF No. 61) on February 19, 2025. For the reasons set forth below, Staples' Motion is **GRANTED**.

As an initial matter, Plaintiff asserts that Staples' Motion should be denied because it was filed after the dispositive motion deadline set in the Court's Amended Scheduling Order (ECF No. 44). (ECF No. 52 at PageID 584.) However, Plaintiff overlooks the Court's subsequent Text Order (ECF No. 46), which extended the dispositive motions deadline to January 3, 2025. Defendant timely filed its Motion on that date. Accordingly, Plaintiff's procedural objection is without merit.

### BACKGROUND

Plaintiff Lorenzo Davis, Jr. began working at Defendant Staples Contract and Commercial LLC's Memphis fulfillment center in September 2019 as a temporary employee and became a full-

time Lean Replenishment Associate in December 2019.  (ECF No. 62 at PageID 1456.)  His job responsibilities included operating a forklift, replenishing inventory, and preparing items for shipment.  (*Id.*)  Eric Bike, who is Black and originally from Cameroon, became his immediate supervisor.  (*Id.* at PageID 1457.)

Beginning in early 2020, Plaintiff made several complaints to Staples' management and Human Resources, alleging that Bike harassed him and discriminated against him on the basis of his race and sex, and that Bike retaliated against him for raising those concerns.  (*see generally* ECF No. 24.)  Among other things, Davis alleges that Bike altered his start time in a way that reduced his hours and affected productivity rankings, removed him from the clean-up crew and forklift duties, denied him access to his productivity records, negatively altered those records, berated him in meetings, and issued multiple disciplinary write-ups that Plaintiff contends were retaliatory.  (ECF No. 52 at PageID 586–87.)  Davis also asserts that management failed to investigate his complaints or take remedial action, and that HR ratified Bike's conduct.  (*Id.* at PageID 587.)

Staples asserts that Davis was disciplined in accordance with its policies due to ongoing performance issues and workplace behavior.  (ECF No. 48-1 at PageID 228–29.)  Davis received multiple counseling statements and disciplinary notices between March 2020 and May 2021, several of which were final written warnings.  (ECF No. 62 at PageID 1463–64.)  Staples maintains that Davis's employment was terminated in November 2021 following a workplace altercation while he was on a final written warning.  (ECF No. 48-1 at PageID 226.)  Davis was the only employee terminated in connection with the incident.  (ECF No. 62 at PageID 1483–84.)

Plaintiff filed this action on April 5, 2022.  (ECF No. 1.)  He later filed an Amended Complaint (ECF No. 24) on February 7, 2024, asserting claims for race and sex discrimination,

harassment, and retaliation under Title VII of the Civil Rights Act of 1954, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981; the Tennessee Human Rights Act ("THRA"); and Tennessee common law. Defendant filed its Motion for Summary Judgment (ECF No. 48) on January 3, 2025. Defendant's Motion for Summary Judgment is now before the Court.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment—and the Court to grant summary judgment—"if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material fact must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing'—that is, pointing out to the district court—that there

3

is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its mere allegations or denials . . . but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56(e)(2)). The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248–49 (citing *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475–76 (6th Cir. 2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id.* at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252–53.

Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those

4

claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.* at 327.

## DISCUSSION

### A. Race Discrimination Claim

Title VII makes it illegal for any employer to discharge any individual because of that person's sex or race.[1]  42 U.S.C. § 2000e-2. A plaintiff may prove a claim of race discrimination under Title VII with either direct or circumstantial evidence. *See Evans v. Walgreen Co.*, 813 F. Supp. 2d 897, 917 (W.D. Tenn. 2011) (citing *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514 (6th Cir. 2009)). "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Ondricko v. MGM Grand Det., L.L.C.*, 689 F.3d 642, 649 (6th Cir. 2012) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). "Circumstantial evidence, on the other hand, is proof that does not on its face establish [unlawful] animus, but does allow a factfinder to draw a reasonable inference that [unlawful activity] occurred." *Id.* "[T]o compensate for the fact that direct evidence of intentional discrimination is hard to come by," the Supreme Court has articulated a test for evaluating indirect evidence of Title VII violations. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 271 (1989) (O'Connor, J., concurring).

For indirect and circumstantial evidence cases, courts apply the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Alsoofi v.*

---

[1] The Court notes at the outset that claims brought pursuant to Section 1981 and the Tennessee Human Rights Act are reviewed within the same framework as Title VII cases; evaluations of claims brought under these three statutes can therefore be combined into a single analysis. *See Newman v. Federal Exp. Corp.*, 266 F.3d 401, 405–06 (6th Cir. 2001); *Jordan v. Matthews Nissan, Inc.*, 539 F.Supp.3d 848, 862–63 (M.D. Tenn. 2021).

5

*Mnuchin*, No. 19-1960, 2020 U.S. App. LEXIS 39805, at *7 (6th Cir. 2020) (citing *Chattman v. Toho Tenaz., Inc.*, 686 F.3d 339, 346 (6th Cir. 2012)).

At the first step, the *McDonnel Douglas* framework requires plaintiff to establish a "*prima facie* case" of race discrimination. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009). If the plaintiff can establish a *prima facie* case, the second step shifts the burden "to the employer to proffer a legitimate, nondiscriminatory reason for its decision." *Upshaw*, 576 F.3d at 584; *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). If the employer carriers its burden at the second step, the third step shifts the burden back to the plaintiff "to prove by a preponderance of the evidence that the reasons offered by the employer were pretextual." *Upshaw*, 576 F.3d at 576; *Chen*, 580 F.3d at 400 ("[T]he burden shifts back to the plaintiff to show pretext—i.e. that the employer's explanation was fabricated to conceal an illegal motive."). The plaintiff has the burden throughout this analysis to "persuad[e] the trier of fact that the defendant intentionally discriminated against the plaintiff . . . ." *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004). "[T]o survive summary judgment, a plaintiff need only produce enough evidence to support a *prima facie* case and to rebut, but not to disprove, the defendant's proffered rationale." *Bolden v. Lowes Home Ctrs., LLC*, 783 F. App'x 589, 594 (6th Cir. 2019) (citing *Griffin v. Finkbeiner*, 689 F.3d 585, 593 (6th Cir. 2012)).

1. <u>Step One—Plaintiff's Prima Facie Case</u>

Turning to the first step of the *McDonnell Douglas* framework, to establish a *prima facie* case of race discrimination, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) similarly situated individuals outside the protected class were treated more favorably. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006). Where a plaintiff fails one element of his *prima*

6

*facie* case, the claim cannot succeed, and courts need not explore additional elements. *See, e.g.,* W*ingo v. Mich. Bell Tel. Co.,* 815 F. App'x 43, 45 (6th Cir. 2020) (citing *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981)) (explaining that "a plaintiff must present enough evidence for a jury to find in the plaintiff's favor on *all* elements of the claim") (emphasis added).

"To make an initial case for racial discrimination, [the plaintiff] must show that he was 'similarly situated' 'in all of the relevant respects' to an employee of a different race who was treated better." *Johnson v. Ohio Dep't of Pub. Safety*, 942 F.3d 329, 331 (6th Cir. 2019) (quoting *Gragg v. Somerset Tech. Coll.* 373, 763, 768 (6th Cir. 2004)).

Plaintiff contends that Bike, his supervisor, made offensive racial statements about African-Americans, including calling them "lazy," and that Bike treated African-Americans with contempt and hostility. (ECF No. 62 at PageID 1493.) Plaintiff argues that Bike, who is black but from Cameroon, discriminated against African-Americans because they were not from Africa and because he could not "culturally relate to us as Americans." (ECF No. 62 at PageID 1460.) Plaintiff asserts that Bike's treatment of him and other African-American employees was based on racial animus, creating a hostile work environment. (ECF No. 62 at PageID 1494.)

However, as Defendant correctly notes, Plaintiff has failed to identify any similarly situated non-African-American employees who were treated more favorably. By his own admission, Plaintiff acknowledged that all of his coworkers on the shift were African-American. (ECF No. 53 at PageID 612.) The record also indicates that Plaintiff could not identify a single non-African-American co-worker. (ECF No. 62 at 1460–61.) This fact alone precludes Plaintiff from establishing the first element of his prima facie case.

Further, Plaintiff testified repeatedly that his supervisor, Bike, "harassed" and "created a hostile work environment for everyone" on his shift, not just Plaintiff. (ECF No. 53 at PageID

7

612.) This admission directly undermines Plaintiff's claim that he was singled out or treated differently because of his race. As the Sixth Circuit has recognized, when an alleged harasser treats all employees poorly regardless of their protected characteristics, such conduct does not constitute discrimination because of race. *See Craddock v. FedEx Corp. Servs., Inc.*, No. 2:17-cv-02780-TLP-cgc, 2020 WL 2543297, at *11 (W.D. Tenn. May 19, 2020) (*citing EEOC v. Harbert-Yeargin, Inc.*, 266 F.2d 498, 508 (6th Cir. 2001)).

Plaintiff's allegations against Bike relate more to perceived national origin differences than race discrimination. (ECF No. 53 at PageID 612.) As mentioned above, Plaintiff testified that Bike treated African-Americans poorly because they were not from Africa and lacked the ability to "culturally relate to [the employees] as Americans." (*Id.*) "National origin discrimination is distinct from race discrimination." *Sumler v. Lesaint/Tagg Logistics*, No. 2:22-cv-02836-TLP-atc, 2024 WL 2106176, at *4 (W.D. Tenn. May 10, 2024) (quoting *Reynolds v. Solectron Glob. Servs.*, 358 F. Supp. 2d 688, 692 (W.D. Tenn. 2005)). Regardless of any potential national origin discrimination claim, which he has not properly alleged, Plaintiff's admission that all employees on his shift were African-American and subject to the same treatment defeats his race discrimination claim.

In sum, Plaintiff has failed to establish an essential element of his *prima facie* case, and therefore his race discrimination claim cannot proceed.

2.  Step Two—Employer's Legitimate, Non-Discriminatory Explanation

But even assuming Plaintiff could establish a *prima facie* case, Staples has proffered a legitimate non-discriminatory reason for Plaintiff's termination: multiple workplace incidents culminating in an altercation with a coworker on October 27, 2021. (ECF No. 48-1 at PageID 226–29.) The record shows that Plaintiff received counseling and disciplinary actions for

behavioral and productivity issues on numerous occasions between March 2020 and May 2021. (ECF No. 62 at PageID 1463–64.) Following the October 27, 2021 altercation with his coworker, Marcus Stevenson, Staples' Human Resources Advisory Consultant Jacolyn Kibler investigated the incident and recommended Plaintiff's termination based on his prior disciplinary record. (ECF No. 62 at PageID 1480–87.)

Plaintiff disputes the legitimacy of the disciplinary actions that led to his termination, claiming they were retaliatory and that some of the write-ups contained forged HR signatures. (*Id.*) Plaintiff contends that Bike manipulated his productivity numbers, denied him access to his own activity reports, and unfairly targeted him for discipline. (ECF No. 62 at PageID 1466–67.) Plaintiff also argues that the investigative process leading to his termination was flawed and that Staples has not clearly identified what policy he violated during the altercation with Stevenson. (ECF No. 62 at PageID 1483–87.)

Despite these contentions, violation of company policy constitutes a facially legitimate, non-discriminatory reason for termination. *See, e.g., Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 558–59 (6th Cir. 2009) (reasoning that purportedly violating company's code of conduct is a facially legitimate, non-discriminatory reason for termination.) As the Sixth Circuit has recognized, "an employer may fire an employee for a good reason, a bad reason, or for no reason at all, so long as its action is not for a discriminatory reason." *Miles v. S. Cent. Human Res. Agency, Inc.*, 946 F.3d 883, 886 (6th Cir. 2020) (quoting *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) (cleaned up)).

While Plaintiff disputes the factual basis and legitimacy of the disciplinary actions, characterizing them as retaliatory (ECF No. 62 at PageID 1463), this does not undermine Staples' legitimate, non-discriminatory explanation at this stage of the *McDonnell Douglas* analysis.

9

Defendant has carried its burden of articulating a legitimate non-discriminatory reason for Plaintiff's termination, shifting the burden back to Plaintiff to demonstrate pretext.

      3.      <u>Step Three—Establishing Pretext</u>

Plaintiff "can establish pretext by showing '(1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not actually motivate his [discipline], or (3) that they were *insufficient* to motivate discharge.'" *Veluzat v. Williamson Med. Ctr.*, 627 F. App'x 534, 541 (6th Cir. 2015) (quoting *Chattman*, 686 F.3d at 349) (alterations in original).

The first category of pretext implicates evidence "that the proffered bases for the plaintiff's discharge never happened." *Id*. at 542. The second category requires the plaintiff to admit the factual basis underlying the employer's explanation and that it *could* have motivated the plaintiff's dismissal, but the plaintiff may attempt to undermine the employer's explanation by showing that discrimination was *more likely* than the employer's explanation. *Id*. (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003)). The third category generally consists of "evidence that other employees, particularly employees outside the protected class, were not disciplined even though they engaged in substantially *identical* conduct." *Id*. (citing *Chattman*, 686 F.3d at 349) (emphasis added). At the pretext stage, an even "closer correlation" is "required for the comparators' conduct" than at the *prima facie* stage. *Miles*, 946 F.3d at 894.

Plaintiff argues that Staples' proffered reasons for his termination are pretextual. He asserts that the disciplinary actions against him had no basis in fact and were instead retaliation for his complaints about discrimination. (ECF No. 62 at PageID 1463–77.) Plaintiff claims that Bike fabricated HR signatures on disciplinary forms, altered his productivity numbers, and singled him out for adverse treatment. (ECF No. 52 at Page ID 590–91.) Regarding the final incident that led to his termination, Plaintiff contends that he "did nothing wrong" during the altercation with

10

Stevenson and that it was Stevenson who was the aggressor and who used racially charged language. (ECF No. 62 at Page ID 1503.) Plaintiff argues that inconsistencies in Staples' explanation for his termination, including uncertainty about which policy he violated and the appropriate disciplinary response, demonstrate pretext. (ECF No. 62 at PageID 1482.)

In this case, Plaintiff has failed to establish pretext under any of the three recognized methods. While Plaintiff disputes the factual basis for the disciplinary actions and characterizes them as retaliatory, he has not presented evidence that would allow a reasonable juror to conclude that Staples' proffered reasons for his termination were pretextual.

Regarding the first method of showing pretext, Plaintiff does not dispute that an altercation occurred between him and Stevenson on October 27, 2021, though he disagrees with how Staples characterized his role in the incident. (ECF No. 62 at PageID 1477–81.) The mere fact that Plaintiff disputes Staples' characterization of events is insufficient to show pretext. *Hardesty v. Kroger Co.*, 758 F. App'x 490, 494 (6th Cir. 2019) ("Just because an employer must choose between inconsistent accounts 'does not mean that there inevitably is a genuine issue of fact concerning the employer's good faith.'").

Second, Plaintiff has not presented evidence that discrimination, rather than his conduct, was the more likely motivation for his termination. The evidence shows that Jacolyn Kibler conducted an investigation of the October 27 incident. (ECF No. 62 at PageID 1479–80.) Based on this investigation, Kibler determined that both Plaintiff and Stevenson violated company policy. (ECF No. 62 at PageID 1481–82.) Given their different disciplinary histories—Stevenson had no prior behavioral discipline while Plaintiff had multiple final warnings—Kibler recommended different disciplinary actions. (ECF No. 62 at PageID 1483–87.) This approach is consistent with a policy of progressive discipline, not discrimination.

11

Third, Plaintiff has not identified any similarly situated employees outside his protected class who engaged in identical conduct but received more favorable treatment. The only comparator Plaintiff identifies is Stevenson, who is also African-American. Moreover, Stevenson and Plaintiff had different disciplinary histories, with Plaintiff on a final warning at the time of the altercation and Stevenson not subject to prior discipline. (ECF No. 62 at PageID 1480–1489.) The Sixth Circuit has recognized disciplinary history as a legitimate basis for different disciplinary outcomes. *See Middleton v. Lexington-Fayette Cnty. Urb. Gov't*, No. 22-6040, 2024 WL 692966, at *7 (6th Cir. Feb. 20, 2024) (citing *Tennial v. United Parcel Serv.*, 840 F.3d 292, 303 (6th Cir. 2016) ("'[d]ifferences in . . . disciplinary history" can establish that two employees are not "similarly situated"). This significant difference between Plaintiff and Steveson therefore undermines an inference of racial discrimination.

Additionally, Staples "does not have to show that its decision-making process was 'optimal or that it left no stone unturned.'" *Craddock v. FedEx Corp. Servs., Inc.*, No. 18-1278, 2021 WL 4127078, at *5 (6th Cir. Aug. 24, 2021) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998)). "Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id.* (quoting *Smith*, 155 F.3d at 807). Further, "an employer's failure to follow self-imposed regulations or procedures is generally insufficient to support a finding of pretext." *Miles*, 946 F.3d at 896 (citing *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 246 (6th Cir. 2005)). The record demonstrates that Staples made a reasonably informed and considered decision to terminate Plaintiff's employment based on the altercation and his prior disciplinary history. Although Plaintiff disputes the motives behind these actions, he has not presented sufficient evidence from which a reasonable jury could find pretext. Therefore, Plaintiff's race discrimination claim fails as a matter of law.

B.      **Sex Discrimination**

Title VII also protects against discrimination on the basis of sex. 42 U.S.C. § 2000e-2(a)(1). Like a claim for race discrimination, a sex discrimination claim is analyzed under the *McDonnell Douglas* framework in the absence of direct evidence.[2] *See White*, 429 F.3d at 240. As with race discrimination, a plaintiff cannot succeed on a sex discrimination claim when he fails to establish an element of his *prima facie* case.

Plaintiff contends that he was subject to sex discrimination because Bike enforced rules against him that were not enforced against female employees and required him to perform work for female employees, such as trash collection. (ECF No. 52 at PageID 599.) Plaintiff testified that Bike favored "attractive" women and now claims that Staples' own management determined that Bike was showing favoritism to women and placed him on an improvement plan for his behavior. (ECF No. 62 at Page ID 1461–62.) But this assertion does not accurately reflect Staples' position on Bike's conduct. Rather, the evidence Plaintiff references shows that Staples believed Plaintiff's "perception was unfounded" (ECF No. 49 at PageID 246), and that Bike was assigned an "action plan . . . to ensure that there was not an *appearance* of preferential treatment." (ECF No. 54-23 at PageID 1027–28.) (emphasis added) Despite Plaintiff's initial assertions that Bike favored attractive women, he later "acknowledged that he and the women were held to the same standards." (ECF No. 53 at PageID 612–13.)

---

[2] The Court notes that during this litigation *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303 (2025), was decided. *Ames* clarified that Title VII's disparate treatment provision "draws no distinctions between majority-group plaintiffs and minority-group plaintiffs" but rather "establish[es] the same protections for every 'individual.'" *Id.* at 309–10. Accordingly, the "background circumstances" analysis featured in Sixth Circuit "reverse discrimination" cases has been eliminated. *Id.* at 313. Both parties in the present case were made aware of *Ames*, but supplemental briefing was not requested.

13

Further, while Plaintiff alleges that the female employees he identifies as potential comparators were treated more favorably, he specifically admitted that those female employees were assigned the same responsibilities as him, including the complained-of trash duties, and were subjected to similar start delays. (ECF No. 62 at PageID 1461–62.) Assuming *arguendo* that these women are true comparators, Plaintiff's *prima facie* case fails at the outset because he cannot show that they were treated differently in any relevant respect.

Staples has given legitimate, non-discriminatory reasons for its actions toward Plaintiff and Plaintiff's subjective belief that he experienced sex discrimination is not enough to establish pretext. *See Malloy v. Potter*, 266 F. App'x 424, 427 (6th Cir. 2008) (affirming summary judgment for employer because "[n]othing in the record, save the plaintiff's speculations, support[ed] a finding" that other similarly situated employees were treated more favorably than the plaintiff). The Sixth Circuit has consistently held that a plaintiff's beliefs, without more, are insufficient to create a genuine issue of material fact on the question of discrimination. *Id.; Neff v. City of E. Lansing,* 724 F. App'x 448, 452 (6th Cir. 2018) ("Although we are to look closely at decisions made on the basis of subjective criteria, [Plaintiff] has not shown that the use of subjective criteria here was a disguise for discrimination."). Rather, Plaintiff's assertions amount to nothing more than his own subjective belief that he was treated unfairly because of his sex, which is insufficient to establish pretext or survive summary judgment. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584-85 (6th Cir. 1992) (concluding that the plaintiff could not establish pretext based on statements that were "nothing more than rumors, conclusory allegations and subjective beliefs which are wholly insufficient evidence to establish a claim of discrimination as a matter of law").

Accordingly, Plaintiff's sex discrimination claim fails as a matter of law.

14

C.  **Retaliation**

As with a discrimination claim, a Title VII retaliation claim can be established using either direct evidence of retaliation or circumstantial evidence that would support an inference of retaliation. *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 543 (6th Cir. 2008). Plaintiff has not come forward with direct evidence of retaliation, so the Court analyzes his retaliation claim under the burden-shifting framework of *McDonnell Douglas*.

The elements of a retaliation claim are similar but distinct from those of a discrimination claim. To establish a *prima facie* case of retaliation under Title VII, Plaintiff must demonstrate that: (1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, "the defendant took an action that was 'materially adverse' to the plaintiff"; and (4) "there is a causal connection between the [] protected activity and the [] adverse action." *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 343–34 (6th Cir. 2021); see also *Jones v. Johanns*, 264 F. App'x 463, 466 (6th Cir. 2007) (citing *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003), and *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006) (requiring a "materially adverse action" rather than an "adverse employment action")).

Plaintiff contends that he engaged in protected activity by making numerous complaints about race and sex discrimination and filing an EEOC charge on February 16, 2021. (ECF No. 62 at PageID 1494, 1498.) Plaintiff asserts that after these complaints, Bike retaliated by changing his start time, removing him from forklift duties, isolating him in separate meetings, denying him access to productivity reports, writing him up for protected activity, and taking other adverse actions. (ECF No. 62 at PageID 1466–67.) Plaintiff argues that his discharge was also retaliatory, noting the suspicious timing of his termination following his complaint about racial harassment by

15

Stevenson. (ECF No. 52 at PageID 589.) Plaintiff further contends that his supervisors and managers were aware of his protected activity, pointing to a statement from a supervisor, Rashod Hammond, who allegedly told Plaintiff that management was "looking to fire him" because of his complaints, and to evidence that management received a litigation hold regarding his EEOC charge. (ECF No. 62 at PageID 1491, 1502.)

In this case, Plaintiff cannot establish the second or fourth elements of his prima facie case—the decisionmakers acting on Defendant's behalf had no knowledge of his protected activity, and Plaintiff cannot show a causal connection between the protected activity and the adverse action. First, the record evidence demonstrates that the decisionmakers involved in his termination—Jacolyn Kibler and Joyce Cruz—were unaware of his protected activity. (ECF No. 62 at PageID 1488–91.) The Sixth Circuit has made clear that plaintiffs cannot satisfy this element by showing only "general corporate knowledge"; rather, they must show that the actual decisionmaker knew of the protected activity. *Evans v. Prof'l Transp., Inc.*, 614 F. App'x 297, 300 (6th Cir. 2015); *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 832 (6th Cir. 1999) (noting the relevant inquiry is whether "management decision-makers" were aware of the protected activity).

Without knowledge of the protected activity by the decisionmakers, causation fails as a matter of law. *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 491 (6th Cir. 2020) (quoting *Mulhall v. Ashcroft*, 287 F.3d 543, 551–52 (6th Cir. 2002) (holding that if decisionmakers are unaware of protected activity, there can be no causal connection). Plaintiff's speculation that Kibler and Cruz might have known about his complaints is insufficient to create a genuine issue of material fact. *See* Mulhall, 287 F.3d at 551–52 (6th Cir. 2002) (indicating that knowledge and causal connection are independent elements that must both be proven).

Plaintiff disputes this conclusion, arguing that Kibler and Cruz must have known about his protected activity because his complaints were well-documented, management had received a litigation hold regarding his EEOC charge, and his final complaint about racial harassment, which Kibler investigated, was itself a protected activity. (ECF No. 62 at PageID 1489–91.) Plaintiff also contends that the suspicious timing of this termination, coming immediately after his complaint about racial harassment by Stevenson, supports an inference of causation. (ECF No. 52 at PageID 588–89.) But even assuming that these assertions are accurate and that the Court were to find Kibler and Cruz had knowledge of Plaintiff's protected activity, Plaintiff still cannot establish causation given the substantial time lapse between Defendant allegedly learning of the protected conduct and Plaintiff's termination—at least six months. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("[W]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.")

Moreover, even if Plaintiff could establish a *prima facie* case of retaliation, Staples has articulated a legitimate, non-retaliatory reason for Plaintiff's termination: his inappropriate behavior during the October 27, 2021 altercation with Stevenson and his prior disciplinary history. Plaintiff disputes the legitimacy of the October 27, 2021 incident and contends that prior discipline was retaliatory (ECF No. 52 at PageID 588–89); however, Plaintiff has not presented evidence sufficient to create a genuine dispute of material fact as to Staples' proffered reasons being pretextual. *See Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (describing the three ways a plaintiff can establish pretext).

17

Accordingly, the Court finds that Plaintiff has failed to meet his burden of establishing either a *prima facie* case of retaliation or that Staples' explanation was pretextual. Therefore, Plaintiff's retaliation claim fails as a matter of law.

**D.    State Law Claims**

Plaintiff also asserts claims under the Tennessee Human Rights Act ("THRA") and for intentional infliction of emotional distress ("IIED") under Tennessee common law. (ECF No. 24 at PageID 95–96.)

When a federal court dismisses all pending federal claims before trial, "it is usually best to allow the state courts to decide state issues." *Kowall v. Benson*, 18 F.4th 542, 549 (6th Cir. 2021). *See also Booker v. City of Beachwood*, 451 F. App'x 521, 523 (6th Cir. 2011) (quoting *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996)) ("When . . . all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims."). "[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).

The Court has determined that Staples is entitled to judgment as a matter of law on Plaintiff's federal claims under Title VII and § 1981. Without an independent basis for federal jurisdiction, the Court follows the usual Sixth Circuit practice and declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Those claims are **DISMISSED WITHOUT PREJUDICE**.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment (ECF No. 48) is **GRANTED**.[3]

**IT IS SO ORDERED**, this 12th day of September, 2025.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE

---

[3] Accordingly, Defendant's pending motions, ECF Nos. 87, 88, 89, and 90, are **DENIED AS MOOT**. Also recently filed were Mr. Simmons's Motions to Withdraw (which were included in ECF Nos. 102 and 103). Because these motions were premised almost entirely on concerns about the upcoming trial in this matter and the Court's present Order disposes of the case in its entirety, the Court considers these motions to be moot as well. All of Plaintiff's pending motions, ECF Nos. 102, 103, and 104, are therefore **DENIED AS MOOT**.